## In re McCONNELL.

(District Court, N. D. New York. July 8, 1912.)

1. TENANCY IN COMMON § 3*)—PROPERTY—PURCHASE OF REALTY BY TWO PERSONS—TITLE ACQUIRED.

> Where two persons purchase real estate for speculation, taking a deed to themselves, and one pays the full price under an agreement that the proceeds on a resale shall reimburse him with interest on one-half of the price as evidenced by a note executed by the other, and the balance

equally divided between them, they are tenants in common only, and, in the absence of any evidence on the subject, their shares are equal.
[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 5–7; Dec. Dig. § 3.*]

2. BANKRUPTCY (§ 155*)—TITLE OF TRUSTEE IN BANKRUPTCY.
A trustee in bankruptcy takes the interest of the bankrupt subject to all equities existing against the bankrupt in favor of third persons.
[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 155.*]

3. TENANCY IN COMMON (§ 4*)—ACQUISITION OF TITLE—PRESUMPTIONS.
The presumption that, where a deed to two or more persons is silent on the subject, their shares are equal, is not conclusive, but may be rebutted and the true interest of each shown.
[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 4; Dec. Dig. § 4.*]

4. BANKRUPTCY (§ 155*)—INTEREST OF TENANT IN COMMON.
Where two persons purchased real estate for speculation and took a deed to themselves and one paid the price under an agreement that it should be repaid, with interest on one-half, on a resale, and the balance, if any, equally divided, and the other subsequently became a bankrupt, the latter's interest, in the absence of bona fide purchasers and liens, was only to the extent of one-half of the surplus after reimbursing the former, and general creditors of the bankrupt had no claim superior to the former growing out of the form of the deed failing to disclose the actual interests of the parties.
[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 155.*]

In the matter of Joseph A. McConnell, a bankrupt. On review of the decision of John B. Muzzy, special master, to whom a matter was referred for report with findings of fact and conclusions of law, subject to review. Decree in accordance with the result arrived at by the master.

George W. Reeves, of Watertown, N. Y., for claimant Eliza Carr.
Howard L. Hooker, of Watertown, N. Y., for trustee.

RAY, District Judge. In 1902, the bankrupt, Joseph A. McConnell, who is a cousin of said Eliza Carr, had noticed a vacant lot in the city of Watertown which was for sale. He conceived the idea that money could be made by purchasing same and dividing it up into building lots and reselling. He did not have the money with which to purchase. McConnell thereupon went to Eliza Carr and informed her that in his judgment money could be made by purchasing the tract and that it could be divided up into three lots and sold in his opinion for $700 each, and that the property could be purchased for $1,400. He also informed Miss Carr that he did not have the money and that if she would furnish the money they would buy the property together; that he would look after the business part of the transaction and procure purchasers and attend to the sale; and that when the lots were sold they would divide the profits. Miss Carr had money in the Savings Bank and so informed McConnell. She inquired of him what security she would have for the money she was advancing to purchase his share, and he informed her that he would give her a note, and that the note would be evidence as to his actual interest in the property. Miss Carr inquired if that would be suf-

ficient to protect her, and McConnell informed her that it would be, and that if at any time she wanted further security he would give her a mortgage on his interest in the property. McConnell further stated to Miss Carr that when the property was sold she should first be paid the $1,400 she was to advance. Miss Carr consented to this arrangement and advanced the $1,400, which was used to pay for the property, and a deed was taken to said McConnell and Miss Carr and recorded in the Jefferson county clerk's office. McConnell gave to Miss Carr his promissory note for $700 payable on demand at 3 per cent. interest. It was understood that this low rate of interest should offset the labor performed by McConnell in managing the business and selling the property. Both understood that the purchase was a speculation. They bore the burdens of the purchase in the manner stated and were to share the profits as stated. McConnell was a lawyer of standing and reputation, while Miss Carr was a lady of but little financial business experience. It was not contemplated that any building or structure should be erected on the lots, but that they should be sold at a profit, if possible. McConnell was supposed to be of ample financial responsibility. Miss Carr never demanded a mortgage as security. McConnell went into bankruptcy, and a partition suit was started; but this was stayed by this court.

[1] In point of fact and equitably McConnell, as against Miss Carr, had no interest in the tract of land unless it should sell for more than $1,400. In fact, it was a kind of a partnership transaction, Miss Carr putting in the capital, McConnell putting in services, and Miss Carr agreeing to accept a small interest as an offset thereto, and the profits, if any, shared equally. To the world and to creditors of McConnell they held themselves out as owners of this land as tenants in common. In fact and law they were tenants in common only. Clark v. Sidway, 142 U. S. 682, 12 Sup. Ct. 327, 35 L. Ed. 1157. It is there held:

"Persons who jointly purchase land to hold it for a rise in value are not partners, but are tenants in common, and either party can sue the other at law for reimbursement of allowances made by him on the joint account without there first having been a final settlement and the striking of a balance."

This case is cited, approved, and followed in Miller v. Ahrens (C. C.) 163 Fed. 870, 875. See, also, Pillsbury v. Pillsbury, 20 N. H. 90, Farrand v. Gleason, 56 Vt. 633, and Winslow v. Young, 94 Me. 145, 160, 47 Atl. 149, to the same effect.

[2] This is not an action in equity to compel McConnell to execute a mortgage. Miss Carr, so far as appears, never demanded a mortgage. But this does not foreclose her right and equity under the agreement made. People ex rel. Mathews v. Woodruff et al., 75 App. Div. 90, 93, 77 N. Y. Supp. 722, and cases there cited. Here we have no bona fide purchasers and no liens whatever. The trustee on his appointment and qualification took the interest of McConnell in this real estate, not as an innocent purchaser, but in the same plight and condition as McConnell held it and subject to all the equities that existed in favor of Miss Carr. Zartman v. First National Bank, 216 U. S. 134, 138, 30 Sup. Ct. 368, 54 L. Ed. 418; Thompson v. Fair-

banks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577. And "a trustee in bankruptcy does not stand like an attaching creditor; he gets no lien by the mere fact of his appointment." Sexton as Trustee of Kessler & Co. v. Kessler & Co., Limited, and Frank Youatt, 225 U. S. 90, 32 Sup. Ct. 657, 56 L. Ed. ——, decided by Sup. Ct. of the U. S., May 27, 1912, not yet officially reported.

If two persons purchase real estate and take the deed to themselves as tenants in common, and one pays nine-tenths of the purchase money and the other one-tenth, and it is orally agreed that when the property is sold the one shall have nine-tenths of the proceeds and the other one-tenth, can it be that, in the absence of a bona fide purchaser for value or liens, the agreement is not enforceable, and that the tenant in common who put in the nine-tenths of the purchase money may not claim it when a sale is made? I think not. If Miss Carr had loaned the $700 to McConnell out and out and taken his note as evidence of the debt, the case would. be different. True, she took his note for $700, but not as evidence of a simple loan or debt. True, she let McConnell have not alone $700, but $1,400, with which to purchase this real estate and take a deed in their names. However, the transaction and agreement was that when the property was sold Miss Carr was first to have her $1,400 out of the proceeds with 3 per cent. interest added on $700 and her share of the increase in value, if any. This represented her interest in this property as one of the two tenants in common. If it should sell for more than $1,400, McConnell had an interest to the extent of one-half of such surplus. If it should not sell for more, he had no interest.

[3] In the absence of any evidence on the subject, the shares of two or more tenants in common named in a deed, the deed being silent on the subject, are presumed to be equal. Jackson v. Moore, 94 App. Div. 504, 507, 87 N. Y. Supp. 1101; Baumann v. Guion, 21 Misc. Rep. 120, 46 N. Y. Supp. 715; Gerting v. Wells, 103 Md. 624, 64 Atl. 298, 433; Campau v. Campau, 44 Mich. 31, 5 N. W. 1062; Keuper v. Mette, 239 Ill. 586, 88 N. E. 218; 38 Cyc. 74; 17 Am. & Eng. Ency. of Law, 651. This presumption is not, however, conclusive, but may be rebutted and the true and actual interest of each of the tenants in common shown. Adams v. Leavens, 20 Conn. 73; Jackson v. Moore, 94 App. Div. 504, 87 N. Y. Supp. 1101; 38 Cyc. 74; Bittle v. Clement (N. J. Ch.) 54 Atl. 138; Walker v. Barrow, 43 La. Ann. 863, 9 South. 479; and 17 Am. & Eng. Ency. of Law, 651, and cases cited. Says 38 Cyc. 74:

"Where a conveyance to purchasers of a tenancy in common is silent as to the interest of each, such interests are ordinarily presumed to be equal. But such presumption is .rebuttable. There is a presumption that purchasers of a common estate hold shares therein in proportion to their contribution to the purchase price, if the contributions to the purchase price be shown to have been unequal; but, if the deed to purchasers does not show their respective interests in the common property, the presumption arising from the deed may be overcome by the presumption arising from the amount of contribution." Bittle v. Clement, supra.

[4] If Miss Carr had loaned $700 of this money out and out to McConnell, taking his note as evidence of the debt, knowing he was

to invest it in this property and take the deed to the two as tenants in common, the interest of each would have been equal, and the trustee would hold one-half of the proceeds. The evidence, however, is undisputed that this was not the effect of the transaction, but that Miss Carr was to have an interest in the real estate and its proceeds when sold to the amount of $1,400, and interest on $700 at 3 per cent. before McConnell was to have anything. There is nothing improbable in the statements of McConnell and Miss Carr, and clearly nothing inequitable in giving Miss Carr her money from the proceeds of the sale, as she furnished the whole consideration for the purchase on the agreement stated. In Wright v. Wright, 59 How. Prac. (N. Y.) 176, it is held that, when one tenant in common receives the entire sales price for the common property, an action for an account may be maintained. Here this court is called upon to ascertain the amount of the respective interests of McConnell and Miss Carr in this real estate at the date of the adjudication. It appears that each year McConnell paid the taxes on said lands, and "he and said Miss Carr have had a settlement each year striking a balance between one-half the amount of said taxes and the said 3 per cent. interest and adjusted the same." Also, McConnell says that he paid the taxes, and that annually they had settlements, and that he paid Miss Carr the difference between 3 per cent. on the $700, and the amount he paid for taxes; but it also appears there is $10.50 of interest now due Miss Carr. The lots have been sold for $1,850. The expenses of such sale are $28, leaving net proceeds of $1,822. From this must be paid the taxable costs and expenses of the partition suit, $78.15. This leaves $1,743.85 of which Miss Carr is entitled to $1,410.50, and the balance, $333.35, is to be equally divided between the trustee and Miss Carr. This carries out the agreement made by the parties and under which McConnell and Miss Carr held this land as tenants in common. General creditors are in no way harmed. They had no lien or claim superior to Miss Carr growing out of the form of the deed in failing to disclose the actual interests of the tenants in common in such property. The witness' and stenographers' fees and compensation of the special master will be deducted from said $333.35 before division and may be fixed in the order or judgment to be entered pursuant hereto. The result arrived at by the master is substantially the same, although he places his decision on the ground of an equitable lien in favor of Miss Carr for the $700 and interest.

There will be a decree accordingly.