OTTO N. WILLIAMS, Appellee, v. FRED E. MONZINGO, Appellant; FRED E. MONZINGO, Administrator, et al., Defendants.

No. 46613.

December 12, 1944.

Frank Porter, of Ogden, and T. J. Mahoney, of Boone, for appellant.

Doran, Doran & Doran, of Boone, for appellee.

WENNERSTRUM, J.—Plaintiff, the only living child of Mae Monzingo, brought an action to partition an eighty-acre farm in Boone County, Iowa. The title to this land was held in the name of Mae Monzingo, now deceased, and Fred E. Monzingo, her husband. The plaintiff contends that his mother held an undivided one-half interest in the eighty acres as a tenant in common. The defendant Fred E. Monzingo asserts that the interest of his deceased wife and him in this property should be on the basis of the proportionate amount of the contribution made by the tenants in common. The trial court held that Mae Monzingo, mother of the plaintiff, owned, at the time of her death, an undivided one-half interest in the property but that this interest should be subject to a charge of $1,000 by reason

of improvements paid for and made by the defendant Fred E. Monzingo on the property involved in this action. The plaintiff, Otto N. Williams, and the defendant Fred E. Monzingo both appealed. Plaintiff appealed from the court's allowance of the sum of $1,000 for improvements paid for and made by Fred E. Monzingo, and the defendant Fred E. Monzingo appealed from the holding of the trial court that Mae Monzingo held a one-half interest in the property purchased and held in the two names.

In the appeal of this case, Otto N. Williams is designated as appellee and Fred E. Monzingo is referred to as the appellant. We shall so allude to them in our later comments. The defendant Raymond Burkhart, a tenant on the farm in question, is in no way concerned with this appeal. His interest in the property, as tenant, was terminated prior to the hearing before the trial court.

The appellee, Otto N. Williams, as previously stated, is the son of Mae Monzingo, now deceased, by a previous marriage. Fred E. Monzingo married Mae Williams on September 1, 1938. These parties had both previously been married. Fred E. Monzingo was sixty-five years of age at the time of this last marriage and Mae Monzingo was then about sixty years of age. The former wife of Fred E. Monzingo had died during the year 1931, and the husband of Mae Williams had died a number of years before. Fred E. Monzingo had four children by his first wife, three daughters and one son. One of the daughters is now deceased, leaving her husband and children surviving her. The other three children still survive. There were three children born to Mae Monzingo, formerly Williams, by her previous marriage. The appellee, Otto N. Williams, is now her only surviving child.

At the time of the marriage of Mae Williams to Fred E. Monzingo she owned a small residence property in Ogden, Iowa. The appellant, Fred E. Monzingo, then owned a farm in Page County, Iowa, that he had purchased for approximately $17,500 in 1913. He later sold this property for $8,000. The record further shows that Mrs. Monzingo had received approximately $800 from an estate and that this money was used in making improvements in and upon the Ogden residence property.

On November 20, 1941, the appellant, Fred E. Monzingo, and his wife, Mae Monzingo, entered into a contract with Sidney L. Stumbo and Mae Stumbo, his wife, for the purchase of the land involved in this action. The consideration, as set out in the contract, was $10,000, of which amount $500 was paid on the execution of the contract and the balance of $9,500 was to be made with the payment of $7,500 in cash on March 1, 1942, and the conveyance of the Ogden property owned by Mae Monzingo at a valuation of $2,000. On this same day there was prepared and signed a warranty deed of conveyance for a consideration of $10,000 from Sidney L. Stumbo and Mae Stumbo, his wife, wherein the grantors therein did ''sell and convey unto Fred E. Monzingo and Mae Monzingo, his wife, of Boone County, State of Iowa'' the property involved in this litigation. The record discloses that Mae Monzingo conveyed the Ogden residence property as contemplated by the contract at a valuation of $2,000, and it is further shown that checks were made payable to Sidney L. Stumbo, drawn on the account of Fred E. Monzingo in the respective amounts of $500 and $7,500.

In connection with the testimony of Fred E. Monzingo he was asked whether he had any intention of giving his wife, Mae Monzingo, any interest in the land purchased other than the interest that her contribution to the purchase price would give her. This question was objected to upon the grounds that the witness was incompetent under the statutory prohibition known as the ''dead man statute'' (section 11257, 1939 Code of Iowa), and also upon the ground that the question contemplated an intent to contradict, vary, or change the terms of a written instrument by parol evidence. The appellant, in answer to the question last referred to, stated: ''No provision, only what she invested.'' He also testified as to his intentions, over objections, as follows: ''No intention of changing it only to think it stood according to the amount invested.''

Sidney L. Stumbo stated that at the time of the making of the contract and the giving of the deed he had a conversation with Mr. and Mrs. Monzingo about how the deed to the farm should be made out. His testimony in regard to this conversation was as follows:

438

"* * * and at that time Mrs. Monzingo said that she would like to have a deed for the twenty acres that has the house on it on the south side of the road, made out to her in her name."

Fred Fisher, a son-in-law of Fred E. Monzingo, testified, over objections as to his competency, that on one occasion he heard Mrs. Mae Monzingo say:

"* * * she had asked father to deed her the south Twenty, but he didn't seem to be willing to do it."

Frank Porter, attorney of Ogden, Iowa, also testified, over objections as to his competency, as follows:

"I heard that conversation between Mr. Monzingo and his wife. They were talking about how that deed to the farm should be made, and the conversation was that Mrs. Monzingo stated she thought she ought to have the deed made to the south twenty acres of this land, but, as I recall it, Mr. Monzingo said that would be more than her interest in the land. The buildings, or some of them at least, were on the twenty acres; that south twenty acres."

The respective contentions of the appellee and appellant may be summarized as follows:

It is the contention of the appellee, Williams, that as the only child and heir of Mae Monzingo he is entitled to a two-thirds interest of the one-half interest of Mae Monzingo in the property involved in this litigation and that by reason of this contention he is entitled to a two-sixths or a one-third interest in the proceeds of the entire property. It is the claim of the appellant, Monzingo, that Williams is entitled to two thirds of a one-fifth interest or a two-fifteenths interest in the proceeds derived from the sale of the entire property, and that he, Monzingo, is entitled to one third of the one-fifth interest and that this one-fifteenth interest plus his own four-fifths or twelve-fifteenths interest would equal a thirteen-fifteenths interest of the entire proceeds derived from the sale of the land. The contention of the appellant, Monzingo, is based upon the contributions of $2,000 and $8,000 made respectively by Mae Monzingo and Fred E. Monzingo in the purchase of the farm property.

The appellant maintains (1) that the trial court was in error in holding, in the face of the conclusive showing that the appellant paid four fifths of the consideration for the land and his wife one fifth thereof, that the burden still remained upon him to negative a gift to her of the difference between one fifth and one half of the consideration by clear, convincing, and practically overwhelming evidence, and (2) that even if the court was correct in placing the burden of proof upon the appellant to show by clear, convincing, and practically overwhelming evidence that no gift was made to the wife, appellant sustained this burden. There is the further question presented in this appeal by reason of the claim by the appellee that there was insufficient evidence to sustain the trial court's holding in allowing for improvements alleged to have been made upon the premises following the time appellant and his wife became the owners thereof.

 I. In our consideration of the main question presented on this appeal, that is, what the respective interests of Mae Monzingo and Fred E. Monzingo were at the time they received the deed in question, we must be guided by certain rules heretofore announced by this court in cases of this character. These rules are commented upon in the case of Lowell v. Lowell, 185 Iowa 508, 511, 170 N. W. 811, 812, from which we quote, as follows:

"Where a conveyance to purchasers of a tenancy in common is silent, they are presumed to take equal shares. In re McConnell, 197 Fed. 438; Burkhardt v. Burkhardt, 107 Iowa 369; Bader v. Dyer, 106 Iowa 715; Bittle v. Clement, (N. J.) 54 Atl. 138; Cage v. Tucker's Heirs, 14 Tex. Civ. App. 316 (37 S. W. 180); Walker v. Barrow (Oxford v. Barrow), 43 La. Ann. 863 (9 So. 479); Stover v. Stover, 180 Pa. 425 (36 Atl. 921).

"This presumption is, however, a rebuttable one. In re McConnell, supra; Oxford v. Barrow, supra; Stover v. Stover, supra; Jenkins v. Rush Brook Coal Co., 205 Pa. 166 (54 Atl. 715); Cage v. Tucker's Heirs, supra.

"It is also true that, if two or more persons advance the purchase price, and the deed is taken in the name of one only, a trust will result in favor of the others in proportion to the part

paid. Culp v. Price, 107 Iowa 133; McClenahan v. Stevenson, 118 Iowa 106; Johnson v. Foust, 158 Iowa 195; Shelangowski v. Schrack, 162 Iowa 176. * * *

"In the case at bar, the deed conveyed the land jointly, without designating the share of each, giving rise to the presumption that they intended to take equal shares. This presumption, being a rebuttable one, upon proof that they contributed unequally to the purchase price, was, in the absence of further proof, overcome, and another presumption arose: that is, that they intended to share in proportion to the amount contributed by each to the purchase price. In re McConnell, supra; Cage v. Tucker's Heirs, supra; 38 Cyc. 74."

In the case of In re Estate of Morrison, 220 Iowa 42, 44, 261 N. W. 436, 437, the facts set forth in the opinion disclose that a father held title to forty acres of land and a mother held title to two hundred acres of land. They sold these two tracts to their son. The consideration for the land conveyed by the father for the forty-acre tract was $2,000 and the consideration for the land conveyed by the mother to the son was $12,000. The son and his wife executed a promissory note for $13,000 payable to "I. A. Morrison and Amanda Morrison." A mortgage, which named I. A. Morrison and Amanda Morrison as grantees, was given on the two hundred forty acres of land as security for the note. The trial court held that a one-seventh interest of the value of the mortgage belonged to the estate of I. A. Morrison and a six-sevenths interest belonged to the estate of Amanda Morrison. It was contended that this holding of the trial court was incorrect and that a one-half interest in said note and mortgage should go to each estate. We held in this last-cited case as follows:

"It is a fundamental rule that where an instrument is drawn payable to the order of two or more payees, such fact raises a presumption of joint ownership, but not of partnership, and of a coequal interest in them. See 8 C. J., p. 177, section 302. We have recognized and applied this rule in the cases of Lowell v. Lowell, 185 Iowa 508, 170 N. W. 811; In re Brown's Estate, 113 Iowa 351, 85 N. W. 617; Abbeg v. Hirst, 144 Iowa 196, 122 N. W. 838, 138 Am. St. Rep. 285. This presumption, how-

ever, is rebuttable and does not preclude proof that their interests are separate and unequal. 8 C. J., p. 177, section 302. This note and mortgage naming these two parties as payees, the presumption, in the absence of all other testimony, is that they would share equally in this property. Appellees contend, however, that, under the showing made in this record, this rule should not apply, and that they have a right to prove that their interests were not equal as a matter of fact. To show this, testimony was introduced.

"The recited consideration of the respective deeds, as heretofore set out, was $2,000 and $12,000. This being true, the ratio, based on the respective valuations therefor, would be as $2,000 is to $12,000, or as one is to six; and, therefore, the I. A. Morrison estate is entitled to one-seventh and the Amanda Morrison estate to six-sevenths of said note and mortgage.

"But the evidence goes further and shows the devolution of the title to the 240-acre tract. I. A. Morrison inherited the 40-acre tract from his father. He later inherited a one-third interest in the father's home farm, which he subsequently deeded to his wife, Amanda. Amanda traded this one-third interest to other parties for the 200-acre tract which stood in her name at the time of her deed to the son. It is argued, therefore, that the 200-acre tract came, in reality, from I. A. Morrison's side of the family, and that by making the note and mortgage payable to both I. A. and Amanda Morrison (and the evidence shows that it was so made under the direction and with the consent of both I. A. and Amanda Morrison), that amounted to a gift from Amanda Morrison to I. A. Morrison of enough interest therein so that each would own one-half thereof; and we are treated to very able briefs on both the questions of gift and of implied trust. We do not see that either of these doctrines has any application to the case before us. Simply stated, the father owned 40 and the mother 200 acres of this tract of land. It seems to us that, under the record, it is immaterial how they became possessed of the land. The consideration which passed from the son to the parents (to wit, the mortgage and note) was given as the purchase price of the land, and was properly divided by the court between the sellers in the proportions as heretofore indicated.

442

"We conclude, therefore, that the decision of the lower court was right, and the same is approved.—Affirmed."

To summarize the holdings in the two previously cited cases, we find the rule to be that where a conveyance to purchasers of a tenancy in common is silent these purchasers are presumed to take equal shares. However, this presumption is a rebuttable one and does not prevent proof from being introduced that the respective holdings and the interests of the parties are unequal. In a showing of unequal contribution, in the absence of further proof, the prior presumption is overcome and another presumption arises; that is, that the parties intended to share in proportion to the amount contributed by each to the purchase price.

The record in the case now before us for review shows without contradiction the respective amounts contributed by Mae Monzingo and Fred E. Monzingo. In the light of this undenied fact it appears to us that the last-referred-to presumption, that the parties intended to share in proportion to the amount contributed by each to the purchase price, is here applicable. We therefore hold that the trial court was in error in its holding that the contention of the appellee, Williams, was correct. We hold that, following the rules and pronouncements heretofore quoted, the interests of the respective parties, under this record, cannot be otherwise than as contended for by the appellant, Monzingo.

We have given consideration to the several objections to the testimony of the witnesses presented by the appellant, as made by the appellee, but we do not deem it necessary to comment on the possible consideration that should be given to this evidence. We are satisfied that this case can and should be decided on the presumptions as heretofore set out and the unquestionable competent evidence. Under the record we cannot hold otherwise than as heretofore announced. We are confident as to the correctness of our holding when we consider the fact that the evidence is undenied as to the respective contributions of the parties. We have also given consideration to the numerous cases cited by appellee that hold where title to property is taken in a spouse and the consideration is paid for by

the other spouse the evidence to establish a resulting trust must be clear, convincing, and practically overwhelming. We do not consider these cases applicable under the record before us.

II. The record is undenied as to the improvements made by the appellant. Upon consideration of this phase of the case we are satisfied that the trial court was correct. Nelson v. Pratt, 212 Iowa 441, 443, 230 N. W. 324, 236 N. W. 386.

We therefore hold that there must be a reversal of this cause on appellant's appeal and an affirmance on the appellee's appeal. We therefore reverse and remand with directions that a decree be entered by the trial court in conformity with our holdings herein.—Reversed on appellant's appeal; affirmed on appellee's appeal and remanded.

All JUSTICES concur.